O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DEANNA GRIFFIN,                    )    NO. EDCV 11-1680-MAN
                                   )
              Plaintiff,           )
                                   )    MEMORANDUM OPINION
         v.                        )
                                   )    AND ORDER
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
              Defendant.           )
_____)

    Plaintiff filed a Complaint on October 24, 2011, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for a period of disability, disability insurance
benefits ("DIB"), and supplemental security income ("SSI").  On December
19, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c), to
proceed before the undersigned United States Magistrate Judge.  The
parties filed a Joint Stipulation on July 16, 2012, in which:  plaintiff
seeks an order reversing the Commissioner's decision and awarding
benefits or, alternatively, remanding for further administrative
proceedings; and the Commissioner requests that his decision be affirmed
or, alternatively, remanded for further administrative proceedings.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On May 7, 2007, plaintiff filed an application for a period of disability, DIB, and SSI, alleging an inability to work since December 31, 1994, due to "dislocation right shoulder/back injury/hyperextended knee." (Administrative Record ("A.R.") 11, 143.)  Plaintiff has past work experience as a "telemarketer," "customer service-clothing," "waitress," "cocktail waitress," and "bartender."  (A.R. 17, 144.)

The Commissioner denied plaintiff's application initially and upon reconsideration.  (A.R. 65-69, 71-75.)  On June 9, 2009, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Jay E. Levine (the "ALJ"). (A.R. 24-59.)  David Reinhart, a vocational expert, also testified. (*Id.*)  On November 12, 2009, the ALJ denied plaintiff's claim (A.R. 7-19), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-5).  That decision is now at issue in this action.

### SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through September 30, 2004, and that she had not engaged in substantial gainful activity from her alleged onset date of December 13, 1994, through the date of the decision.  (A.R. 10.)  The ALJ further determined that plaintiff has the severe impairments of: Meniere's disease; degenerative disc disease; degenerative joint disease; chronic right shoulder dislocations; bipolar disorder; and marijuana addiction.  (A.R. 13.)  The ALJ concluded that none of these

impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the Listing of Impairments. (*Id.*)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform "sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a)," except she would be limited as follows:

> [N]o work around unprotected heights or dangerous machinery. She would be limited to occasional climbing, stooping or lifting above shoulder level with the left upper extremity; and no balancing, kneeling, crouching, crawling, and no conveyor belt work or piecework.

(A.R. 14.)

The ALJ found that plaintiff's past work as a telemarketer constitutes past relevant work under the regulations and that she is capable of performing it, both as that work is generally performed and as she actually performed it. (A.R. 18.) Additionally, after having considered plaintiff's age, education, work experience, and RFC, the ALJ found that other jobs exist in the national economy that plaintiff could perform, including "telephone quotations clerk," "pari-mutuel ticket checker," and "order clerk food and beverage." (*Id.*) The ALJ further determined that plaintiff's substance abuse was not a contributing factor material to the determination of disability, because "even in the absence of her substance addiction, [the ALJ] would still not be able to

3

find [plaintiff] to be disabled." (A.R. 18-19.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since December 31, 1994, the alleged onset date of her disability. (*Id.*)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

4

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following three issues:  (1) whether the ALJ properly evaluated the medical evidence of record relevant to plaintiff's mental impairment; (2) whether the ALJ properly considered plaintiff's subjective complaints; and (3) whether the ALJ erred in finding that plaintiff's prior employment as a telemarketer constituted past relevant work ("PRW").  (Joint Stipulation ("Joint Stip.") at 3.)

I.   **The ALJ Failed To Properly Evaluate The Medical Evidence Concerning Plaintiff's Mental Impairment.**

An ALJ is obligated to take into account all medical opinions of record.  20 C.F.R. §§ 404.1527(d), 416.927(d).  It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical

testimony.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(d), 416.927(d).

The opinions of treating physicians are entitled to the greatest weight, because a treating physician is hired to cure and has a better opportunity to observe the claimant.  Magallanes, 881 F.2d at 751.  When a treating physician's opinion is not contradicted by another physician's opinion, it may be rejected only for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  When contradicted by another doctor's opinion, a treating physician's opinion may be rejected only if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record.  Id.  An ALJ must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of either a treating or examining physician.  Id.

The medical treatment records before the ALJ concerning plaintiff's mental impairment were from the Riverside County Department of Mental Health ("Riverside County"), where plaintiff was treated from December 2008, through at least June 2009.  (A.R. 499-519, 547-65, 567-83.)  It appears that plaintiff was seen monthly by her treating psychiatrist, David Aryanpur, M.D., and by several different clinicians on a weekly basis.  (Id.)

On December 31, 2008, Dr. Aryanpur noted that plaintiff was doing a "little better" but was "frustrated." (A.R. 516.) He also noted that plaintiff exhibited "mood swings" and "slightly rambling speech," and was on "verge of tears." (*Id.*) He further noted marijuana use on December 28, 2008, and he recommended that plaintiff abstain from drugs, especially marijuana. (*Id.*)

On February 6, 2009, Dr. Aryanpur noted that plaintiff's mood was improved and she had less rambling speech. (A.R. 505.) He noted her last marijuana use was on January 24, 2009. (*Id.*) He recommended that she continue with Tegretol, the medication for her bipolar disorder. (*Id.*)

On March 6, 2009, Dr. Aryanpur reported that plaintiff was doing well but had a "lapse . . . during her wedding which negatively affected her mood but only temporarily." (A.R. 564.) Her last marijuana use was on February 15, 2009. (*Id.*) He indicated that she should continue to take Tegretol. (*Id.*)

On April 3, 2009, Dr. Aryanpur noted that plaintiff had "family stressors" and is "a little on edge as a result," but that she was "holding up fairly well." (A.R. 560.) He noted she last used marijuana three weeks ago and should continue taking Tegretol. (*Id.*)

On May 15, 2009, Dr. Aryanpur noted that plaintiff was "doing better," and that the "family stressors have resolved themselves." (A.R. 549.) Plaintiff ranked her mood "7/10." (*Id.*) He noted her last marijuana use was the day before and she should continue taking

1  Tegretol.  (*Id.*)

2

3      An "Adult Annual Re-Assessment" was completed on May 29, 2009, by
4  T. Drumgole, IMF.  (A.R. 572-77.)  In the Re-Assessment, plaintiff was
5  diagnosed with bipolar disorder, NOS, and cannabis dependence.  (A.R.
6  572.)  Plaintiff's motor activity was restless, her concentration was
7  poor, and her memory was slightly impaired.  (A.R. 574.) Plaintiff had
8  a depressed mood, flight of ideas/racing thoughts, excessive anxiety,
9  muscle tension, recurrent distressing dreams, and fear of losing
10  control.  (*Id.*)  Plaintiff's thought process was characterized as
11  "blocking" and reflecting "flight of ideas/loose associations."  (*Id.*)
12  Her thought content was "mood congruent," she had no delusions, but she
13  did have visual perceptions/hallucinations.  (*Id.*)  She had a "low
14  average" general fund of knowledge, fair insight, and poor judgment and
15  impulse control.  (*Id.*)  Plaintiff was assessed a GAF score of 50.[1]
16  (A.R. 573.)

17

18      At the hearing before the ALJ, plaintiff testified that her bipolar
19  disorder was her most serious problem.  (A.R. 32.)  She stated that it
20  causes her uncontrollable emotions and anxiety, and it affects her
21  ability to work, because if she "can't keep the moods under control,
22  it's not good to be around people."  (A.R. 33-34.)  Plaintiff testified
23  that she takes Tegretol for the bipolar disorder.  (A.R. 33)  She also

24

25      [1]   The GAF scale "[c]onsider[s] psychological, social, and
occupational functioning on a hypothetical continuum of mental
health-illness."  Diagnostic and Statistical Manual of Mental Disorders,
26  DSM-IV-TR, 34 (rev. 4th ed. 2000).   A rating of 41-50 reflects
"[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional
27  rituals, frequent shoplifting) OR any serious impairment in social,
occupational, or school functioning (*e.g.*, no friends, unable to keep a
28  job)."  *Id.*

goes to a "co-occurring disorder group" at the mental health clinic twice a week for her mental illness and marijuana addiction. (A.R. 41.)

After the ALJ's adverse November 12, 2009 decision, plaintiff's counsel provided to the Appeals Council a "Mental Impairment Questionnaire" from Dr. Aryanpur dated January 20, 2010. (A.R. 651-54.)

In the Impairment Questionnaire, Dr. Aryanpur opined that plaintiff suffered from bipolar disorder, NOS. (A.R. 651.) He assessed a GAF score of 50 and noted that plaintiff's highest GAF score in the past year was 56. (*Id.*) Dr. Aryanpur opined that plaintiff's prognosis is "guarded." (A.R. 653.) Dr. Aryanpur described plaintiff's mental impairment and symptoms as "mood swings and depression which cause apathy, lethargy, feelings of worthlessness, impairment in focus and concentration," and he noted that plaintiff has had two suicide attempts. (A.R. 652.) He indicated plaintiff's limitations to be: slight restriction of activities of daily living; marked difficulties in maintaining social functioning; frequent deficiencies in concentration, persistence, or pace; and repeated episodes of deterioration or decompensation. (A.R. 654.) Dr. Aryanpur also noted that plaintiff's impairments or treatment would cause her to be absent from work more than three times a month. (A.R. 653.) He stated that plaintiff's prescribed medications (Tegretol and Trazodone) cause drowsiness. (*Id.*) Dr. Aryanpur concluded that plaintiff's "emotional instability, low energy and decrease[d] ability to concentrate preclude [her] from substantial full-time employment." (A.R. 654.)

The Appeals Council denied review, stating:

We considered the medical source statement that your representative submitted with the request for review . . . but the assessment was not accompanied by an explanation with specific references to treatment records.   Absent an explanation with specific references to the treatment record, we have concluded that the record does not support the assessment and that the assessment . . . would not have changed the [ALJ's] decision in the case.   We have reviewed the entire record and we have found no basis for changing the [ALJ's] decision.

(A.R. 2.)  Plaintiff argues that a remand is appropriate based on the ALJ's failure to properly consider the medical evidence "as it pertains to the extent and severity of her mental impairment," and in light of the additional evidence she presented to the Appeals Council. (Joint Stip. 4-5.)  The Court agrees.

Although the ALJ found plaintiff's bipolar disorder and marijuana addiction to be severe, he does not address these impairments in any other portion of his opinion.  (A.R. 13.)  When an ALJ has determined that a claimant has a severe impairment at step two, "all medically determinable impairments must be considered in the remaining steps of the sequential analysis." *See* Orn, 495 F.3d at 630.  However, an ALJ may properly conclude that a severe mental impairment does not necessarily limit the ability to perform basic work activities if the medical record supports such a finding.  *See* Bray v. Comm'r, 554 F.3d 1219, 1228-29 (9th Cir. 2009)(finding that the ALJ adequately accounted for a mental disorder despite finding it did not limit all work).  Here,

10

the ALJ neither determined whether plaintiff's severe mental impairment limited her ability to perform basic work activities nor considered the uncontradicted evidence regarding plaintiff's mental impairment in the remaining steps of the sequential analysis.  Further, the ALJ did not make any credibility findings as to whether the mental impairment could reasonably be expected to produce plaintiff's complaints.[2]  Thus, the ALJ committed error.

Further, because the Appeals Council considered, *inter alia*, the Impairment Questionnaire in deciding whether to review the ALJ's decision, this Court also must consider such evidence in determining whether the ALJ's decision was supported by substantial evidence and free from legal error.  *See* <u>Brewes v. Comm'r</u>, 682 F.3d 1157, 1163 (9th Cir. 2012)("when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence"); <u>Warner v. Astrue</u>, 859 F. Supp. 2d 1107, 1114-15 (C.D. Cal. 2012)(though the Appeals Councils is not required to provide reasons for discounting additional evidence, the Court reviews "the ALJ's decision in light of the record as a whole, including the evidence submitted for the first time to the Appeals Council")(*citing* <u>Taylor v. Comm'r</u>, 659 F.3d 1228,

---

[2]  The ALJ must make a finding on the credibility of the statements based on a consideration of the entire record whenever statements about intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence.  The ALJ's findings '"must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."'  <u>Moisa v. Barnhart</u>, 367 F.3d 882, 884 (9th Cir. 2004)(*quoting* <u>Rollins v. Massanari</u>, 261 F.3d 853, 856-57 (9th Cir. 2001)).

1231–32 (9th Cir. 2011)).  The Court may remand upon finding that "there is a substantial likelihood the ALJ's consideration of the additional evidence submitted to the Appeals Council will materially alter the ALJ's disability analysis."  <u>Warner</u>, 859 F. Supp. 2d at 1117.

As noted above, although the ALJ determined that plaintiff's bipolar disorder and marijuana addiction were severe at step two of the sequential analysis, the ALJ failed consider their effects in the remaining steps of the analysis.  Dr. Aryanpur's Impairment Questionnaire provides a link between the treating notes from Riverside County and plaintiff's specific mental limitations and restrictions that had not been considered by the ALJ.  With the addition of Dr. Aryanpur's RFC assessment, there is substantial evidence in the record to show that plaintiff's mental impairment limits her ability to perform basic work activities.  Therefore, in view of the evidence before the ALJ *and* the additional evidence submitted to the Appeals Council, this Court cannot conclude that the ALJ's decision is supported by substantial evidence, or that any error is harmless.  Indeed, the ALJ's consideration of the additional evidence submitted to the Appeals Council may materially alter the ALJ's disability analysis.  Therefore, remand is appropriate to permit the ALJ to properly evaluate all of plaintiff's medical records concerning her mental impairment.  *See* <u>McLeod v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011)(remand appropriate when there was a substantial likelihood that the ALJ's consideration of additional evidence submitted to the Appeals Council could alter the ALJ's analysis).

II. **The ALJ Failed To Set Forth Clear And Convincing Reasons For Finding Plaintiff's Testimony Regarding Her Subjective Symptoms And Pain To Be Not Credible.**

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa, 367 F.3d at 885; Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

Here, the ALJ found that "[a]fter careful consideration of the evidence . . . [plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 17.) Further, the ALJ cited no evidence of malingering by plaintiff.

13

Nonetheless, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible" to the extent they varied from the ALJ's own RFC assessment. (*Id.*)  Accordingly, the ALJ's reasons for finding that plaintiff was not credible with respect to her subjective symptom and pain testimony must be "clear and convincing."

During the June 9, 2009 hearing, plaintiff testified that she had back problems and arthritis that caused "problems [] sitting or standing for very long periods of time"; in particular, once a week, her back pain requires her to lay on the floor until the pain stops. (A.R. 35, 46-47; *see also* A.R. 38-39, 48-49.)  She testified that her back pain on a regular basis is at an eight out of a ten level of severity. (A.R. 47-48.)  She testified that her right shoulder hurts frequently and her left knee is hyperextended and bothers her.  (A.R. 39, 49-50.)  Plaintiff also experiences dizziness, ringing in her ears, and balance problems.  (A.R. 50-51.)  She stated that her symptoms interfere with her ability to concentrate and focus on a job.  (A.R. 52.)  Plaintiff testified that she could sit a half an hour before she would have to change positions and could stand for only an hour at a time.  (*Id.*)  She further testified that she could not work a full-time job due to her "own head, because I overdo myself, and then I get overwhelmed."  (A.R. 53.)

The ALJ found 12 reasons for finding plaintiff to lack credibility with respect to her subjective symptoms and pain.  (A.R. 16-17.)  These stated reasons were:  (1) the objective evidence did not support plaintiff's allegations of pain or other limitations (reasons three

14

through seven, nine, ten, and twelve); (2) plaintiff's testimony regarding her daily activities was inconsistent with her subjective symptom/pain complaints (reasons one and two); (3) plaintiff's symptoms were well-controlled by her medication (reason eight); and (4) no physician ever opined that plaintiff's severe impairments met or equaled listing level limitations (reason eleven). (*Id.*)

Eight of the twelve bases for the ALJ's rejection of plaintiff's subjective complaints essentially were that the objective medical evidence did not corroborate the alleged symptom/pain severity.[3] (A.R.

------

[3] Specifically the ALJ cited to the following objective evidence (A.R. 16-17):

**Third**, lumbosacral spin x-rays taken on August 2, 2007, revealed no significant abnormalities demonstrated. **Fourth**, during the August 20, 2007, consultative orthopedic examination by Dr. Boeck, [plaintiff] was noted to stand with shoulders level and pelvic crests level; her head was held straight and spinal alignment was normal with legs straight and feet pointing straight ahead; and her walking was even, steady and heel-to-toe, and no limp was present.

**Fifth**, the August 24, 2007 arthrogram of her right shoulder was unremarkable. **Sixth**, on March 27, 2008, [plaintiff] had an MRI scan of her lumbar spine. Impressions of the scan were of only some mild discogenic inferior end-plate marrow edema noted at L5. **Seventh**, additional x-rays were taken of [plaintiff's] right shoulder on September 23, 2008 and October 24, 2008, with the resulting impressions of unremarkable right shoulder x-rays.

. . . .

**Ninth**, December 10, 2008, lumbar spine x-rays revealed no fracture or significant degenerative changes. **Tenth**, again on February 18, 2009, lumbar spine x-rays showed no acute changes to the lumbar spine.

. . . .

**Twelfth**, the objective evidence of [plaintiff's] medical record does not establish impairments likely to produce disabling pain or other limitations as alleged for any period

16-17.) Although "the medical evidence is a relevant factor in determining the severity of the claimant's pain and its disabling effects," once a claimant produces objective medical evidence of an underlying impairment, an ALJ "may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." Rollins, 261 F.3d at 856-57; see also Bunnell, 947 F.2d at 347 (noting that "[i]f an adjudicator could reject a claim of disability simply because a claimant fails to produce evidence supporting the severity of the pain there would be no reason for an adjudicator to consider anything other than medical findings"). Thus, with respect to the ALJ's third through seventh, ninth, tenth, and twelfth reasons, the failure of the objective medical evidence to fully corroborate plaintiff's testimony regarding her subjective symptoms/pain constitutes a valid reason for finding her testimony to lack credibility only if the other reasons upon which the ALJ based his credibility finding are supported by substantial evidence in the record. However, as discussed below, the other reasons posited by the ALJ for rejecting plaintiff's testimony are not convincing.

First, the Court finds that the ALJ's summary of plaintiff's daily activities mischaracterizes plaintiff's statements regarding those activities. See Regennitter v. Comm'r, 166 F.3d 1294, 1297 (9th Cir. 1999)("inaccurate characterization of the evidence" constitutes error). The ALJ opined -- referencing plaintiff's "Exertional Daily Activities Questionnaire Since Your Disability Began" and her testimony at the June 9, 2009 hearing -- that plaintiff's daily activities include:

of 12 or more continuous months.

16

"independently caring for her own personal hygiene; shopping; and performing household chores, such as cleaning and laundry; performing yard work; driving a vehicle; attending COD meeting and attending church. (*See* A.R. 16.) Based on his description, the ALJ concluded that plaintiff's activities are inconsistent with a disabling level of impairment. (*Id.*) However, in the same Questionnaire, plaintiff explained that she does a "small load of laundry," drives "as far as I have to," her "yard work" consists of cleaning "dog poop" and "trim[ming] rose bushes" but it hurts her back and shoulders, and while she performs household chores, "it hurts me a lot and I get very winded and tire easily." (A.R. 201-02.) Plaintiff also testified at the hearing that she has somebody help her "with the groceries out to the car." (A.R. 41.) The ALJ erred in drawing conclusions regarding the extent of plaintiff's activities that failed to take these significant qualifications and limitations into account. *See* Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998)(the ALJ erred in developing the evidentiary basis for his finding by not fully accounting for all evidence of record and by inaccurately paraphrasing portions of the record).

The ALJ also rejected plaintiff's subjective complaints, because "[p]erforming activities such as mowing the lawn, is not consistent with an individual too disabled to perform any work activity." (A.R. 16.) However, plaintiff testified that she dislocated her shoulder while pulling on the lawn mower starter, and thus, "I don't do lawnmowers anymore." (A.R. 40.) The ALJ's finding, therefore, is contrary to the evidence.

1    Moreover, the ALJ does not articulate how plaintiff's daily
2    activities are at odds with her alleged pain, as well as her mental and
3    physical limitations.  The ALJ fails to explain how plaintiff's ability
4    to care for herself, grocery shop with the assistance of others, perform
5    light household chores (albeit, becoming exhausted when she does so),
6    and drive to attend meetings and church translates into the ability to
7    perform full-time work.  *See* <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050
8    (9th Cir. 2001)(noting that the "mere fact that a plaintiff has carried
9    on certain daily activities, such as grocery shopping, driving a car, or
10   limited walking for exercise, does not in any way detract from her
11   credibility as to her overall disability"); <u>Smolen v. Chater</u>, 80 F.3d
12   1273, 1283 n.7 (9th Cir. 1996)("The Social Security Act does not require
13   that claimants be utterly incapacitated to be eligible for benefits, and
14   many home activities may not be easily transferable to a work
15   environment where it might be impossible to rest periodically or take
16   medication.").  Therefore, the ALJ's first and second reasons do not
17   constitute clear and convincing reasons for finding plaintiff to be not
18   credible.

19

20   Second, the ALJ's rejection of plaintiff's subjective complaints on
21   the ground that plaintiff "takes hydrocholorothiazide for Meniere's
22   disease and Tegretol for bipolar disorder; [and] there are no reports of
23   complications from either the Meniere's disease or the bipolar disorder
24   and they appear to be well-controlled on medication" (A.R. 17) also is
25   not convincing, because it is not supported by the evidence.  Contrary
26   to the ALJ's contention that plaintiff's Meniere's disease and bipolar
27   disease "appear" to be "well-controlled," plaintiff testified that,
28   although she takes hydrochlorothiazide for her left ear, she has

1  "problems with it." (A.R. 33.)  In addition, as noted above, plaintiff

2  testified that her ear problem "offsets" her and makes her dizzy,

3  causing her to periodically lose her balance and fall.   (A.R. 51.)

4  Further, in response to the ALJ's question, "would you say that your

5  bipolar is fairly well controlled," plaintiff responded, "[it] still

6  gives me problems," including "[u]ncontrollable emotions" and anxiety.

7  (A.R. 34.)  Plaintiff also testified that, while she takes Tegretol for

8  her bipolar disorder and "[i]t seems to be doing all right":

9

10      I discussed with my doctor when I just saw him that we might

11      need to do something else.  I don't know if it's just added

12      stress of what I've been going through with this right now,

13      but I've been getting manic -- more on the manic side, I've

14      noticed.  I haven't been able to sleep.

15

16  (A.R. 33-34.)  Moreover, the ALJ does not explain how the purportedly

17  "well-controlled" nature of plaintiff's Meniere's disease and bipolar

18  disease would, in the light of her other impairments, undermine her

19  complaints of pain or would make plaintiff able to perform work-related

20  functions.   Accordingly, the ALJ's eighth reason for discrediting

21  plaintiff is unpersuasive.

22

23      Third, the ALJ stated that plaintiff is not fully credible, because

24  "when discussing [plaintiff's] impairments, no physician, neither any of

25  the [plaintiff's] treating physicians or a State Agency physician, ever

26  opined that listing level limitations were ever met or equaled." (A.R.

27  17.)   This is not a legally valid reason for rejecting plaintiff's

28  subjective symptom/pain testimony.  Whether or not an impairment meets

or medically equals a listed impairment has no reasonable bearing upon a claimant's credibility. The fact that a severe impairment does not satisfy a Listing for purposes of the step three analysis does not prevent it from constituting a disabling impairment under the Social Security Act. The ALJ's eleventh reason for discrediting plaintiff is not tenable.

In sum, the 12 reasons given by the ALJ were not clear and convincing reasons for discrediting plaintiff's testimony. Accordingly, the ALJ's adverse credibility determination constitutes reversible error.

**III.** **On Remand, The ALJ Must Reconsider Plaintiff's Ability to Perform Her Past Relevant Work And Her Ability To Perform "Other Work".**

Relying on the vocational expert's testimony, the ALJ determined that plaintiff could "perform her past relevant work as a telemarketer, both as she actually performed the duties and as they are generally performed in the national economy, because such work would not be precluded by [plaintiff's] exertional or non-exertional limitations." (A.R. 18.)

To qualify as "past relevant work," work activity must have, among other things, amounted to "substantial gainful activity." 20 C.F.R. §§ 404.1565(a), 416.965(a). Plaintiff argues that her limited experience as a telemarketer does not qualify as "past relevant work," because: based on her sparse earnings as a telemarketer, her work as a

telemarketer does not meet the "substantial gainful activity" criterion of the "past relevant work" test; and "she did not perform [work as a telemarketer] long enough to adequately learn this job." (Joint Stip. at 16-17.)

The record reflects that in 2007, plaintiff earned $212.00 as a telemarketer. (A.R. 123, 220.) According to the Social Security Administration ("SSA") website, the baseline amount for "substantial gainful activity" was $900 per month in 2007. *See* http://www.ssa.gov/OACT/COLA/sga.html. Thus, as plaintiff's average monthly income in 2007 fell below the requisite baseline amounts for "substantial gainful activity," her past work -- for approximately one month -- as a telemarketer could not have constituted "past relevant work."

Further, it appears that plaintiff's work as a telemarketer did not last long enough for plaintiff to learn to perform this job, according to the Dictionary of Occupational Titles ("DOT"). (Joint Stip. at 16.) The DOT lists Specific Vocational Preparation ("SVP") ratings for each described occupation. SVP is defined "as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, app. C, 1991 WL 688702. According to the DOT, a telemarketer has a SVP level of three. DOT 299.357-014. A job with a three SVP rating means that a typical worker will require ""[o]ver 1 month up to and including 3 months" to learn the skills necessary to perform the job. DOT, app. C, 1991 WL 688702. According to the record, plaintiff performed this job for approximately

one month. (A.R. 126.)  Thus, on its face, the DOT's SVP rating for a telemarketer appears to be inconsistent with the length of time plaintiff spent at the job.

The vocational expert did not explain or justify this discrepancy between his testimony and the DOT, and the ALJ failed to inquire about this discrepancy.  This failure constitutes error.  *See* <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1153-54 (9th Cir. 2007)(only after determining whether the vocational expert has deviated from the DOT and whether any deviation is reasonable may an ALJ properly rely on the vocational expert's testimony as substantial evidence to support a disability determination).  Accordingly, the ALJ's conclusion that plaintiff's telemarketer job was "past relevant work" is not supported by substantial evidence and was error.

Defendant argues that this error is harmless, because the ALJ also determined that plaintiff could perform "other work" that existed in significant numbers in the national economy, such as "telephone quotations clerk," "pari-mutuel ticket checker," and "order clerk food and beverage." (Joint Stip. at 19.)  Plaintiff argues that the ALJ's alternative finding was not supported by substantial evidence, because the ALJ failed to pose a complete and accurate hypothetical to the vocational expert.  (Joint Stip. at 17.)  As there are several matters that the ALJ needs to review and reconsider on remand, the Court does not address this issue, because the ALJ's conclusion regarding plaintiff's RFC, and thus her capacity to perform "other work," may change.  To properly review and reconsider this issue, the ALJ needs to evaluate *all* of plaintiff's mental health records and assess properly

what weight, if any, this evidence has on the ALJ's assessment of plaintiff's RFC and credibility.  Further, to the extent plaintiff's RFC may need to be reassessed, additional testimony from a vocational expert likely will be required.

**IV.   <u>Remand Is Required</u>.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors.  *See, e.g.,* <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993)(ordering remand so that the ALJ could articulate specific and appropriate findings, if any existed, for rejecting the claimant's subjective pain testimony).

///

///

///

1

**CONCLUSION**

2

3        Accordingly, for the reasons stated above, IT IS ORDERED that the

4 decision of the Commissioner is REVERSED, and this case is REMANDED for

5 further proceedings consistent with this Memorandum Opinion and Order.

6

7        IT IS FURTHER ORDERED that the Clerk of the Court shall serve

8 copies of this Memorandum Opinion and Order and the Judgment on counsel

9 for plaintiff and for defendant.

10

11        LET JUDGMENT BE ENTERED ACCORDINGLY.

12

13 DATED: December 5, 2012

14

15                                    _____
                                         MARGARET A. NAGLE
16                                    UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28